EVA M. WORRICK, TOWNSHIP CLERK OF THE TOWNSHIP OF CHERRY HILL, PLAINTIFF–RESPONDENT, v. LEWIS KATZ, DEFENDANT–APPELLANT, AND SAMUEL NATAL, DEFENDANT–RESPONDENT, AND JOHN DOE AND RICHARD ROE, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued March 23, 1981—Decided March 27, 1981.

Before Judges BISCHOFF, MILMED and FRANCIS.

*Peter M. Halden* argued the cause for appellant Lewis Katz.

*Ralph J. Kmiec,* Township Solicitor for the Township of Cherry Hill, argued the cause for plaintiff-respondent.

*Saul J. Steinberg* argued the cause for defendant-respondent Samuel Natal (*Steinberg & Ginsberg,* attorneys).

*David S. Myers, Jr.,* an announced candidate for mayor of the Township of Cherry Hill, argued the cause *pro se.*

The opinion of the court was delivered by

MILMED, J. A. D.

Pursuant to referendum held in November 1974, the voters of the Township of Cherry Hill (township) adopted the Council-Manager Plan B form of government provided in Article 10 of the Optional Municipal Charter Law, *N.J.S.A.* 40:69A–1 *et seq.* At the general election held November 4, 1980 the voters of the township adopted the Mayor-Council Plan B form of government provided in Article 4 of the same statute. The next regular municipal election in the township, to be held May 12, 1981, will call for the election of a mayor and seven council members to take office under the new form of government beginning July 1, 1981. Thus, in light of the adoption of *L.*1980, *c.* 75, approved and effective July 24, 1980, plaintiff-respondent township clerk sought a declaratory judgment in the Law Division determining whether the township must conduct a runoff election where, in regard to any of the respective offices, no candidate receives a majority of the votes cast. She also sought certification of the action as a class action "binding upon all candidates who will eventually file nominating petitions."

The trial judge who heard the matter denied plaintiff's application for certification of the matter as a class action and dismissed the complaint "for lack of a justiciable controversy." This appeal followed. We heard the matter on an accelerated basis and reverse.

In her complaint filed in the Law Division plaintiff asserted, in essence, that because of the operation of L.1980, c. 75, it is unclear whether a runoff election would be required where, at the municipal election to be held May 12, no candidate for any of the respective offices (mayor or member of the township council) to be voted on receives a majority of the votes cast for that office. She asked for a judicial determination of the issue

> ... since one of her functions is to advise in regard to budgetary items in regard to elections. Thus if there is a run off election, the municipal budget for the year 1981 should provide funding for such a run off election. If there is no run off election, then the municipal budget for the year 1981 should include provision only for one election rather than two.

It appears that in the trial court varying views were advanced by the parties regarding the meaning of L.1980, c. 75, and whether, under that statute, runoff elections are now required in the township. It is obvious from the briefs submitted to us and the oral argument before this court that there was an actual and bona fide controversy between at least some of the parties which involved differing viewpoints as to the meaning of pertinent provisions of the legislation. The situation thus came within the ambit of the Uniform Declaratory Judgments Act N.J.S.A. 2A:16–50 et seq., a remedial statute designed "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16–51. A justiciable controversy existed which was ripe for judicial determination. As Justice Jacobs observed for a unanimous Supreme Court in Union Cty. Freeholder Bd. v. Union Cty. Park Comm'n, 41 N.J. 333 (1964):

> Any judicial hostility to its use is a thing of the past for the act is now well-recognized as remedial in nature and entitled to liberal construction and administration. [at 336]

Additionally, it appears that the requirements of *R.* 4:32–1 were sufficiently met and that plaintiff's application to have the matter certified as a class action should have been granted.

The legislation which became Chapter 75 of the Laws of 1980 was introduced in the Senate as Senate Bill 738. The Senate County and Municipal Government Committee Statement to the bill, dated May 5, 1980, points out in its opening paragraph:

> Senate Bill No. 738 would eliminate run-off elections in municipalities which have adopted a Mayor-Council Plan B or C, or Council-Manager Plan A, B, C or D, form of government under the Faulkner Act (P.L.1950, c. 210; C. 40:69A–161), by allowing candidates receiving the greatest number of votes to be elected to office and eliminating the requirement for majority votes.

The Assembly Municipal Government Committee Statement to the bill, dated June 16, 1980, reads:

> This bill, as amended in the Senate, permits those 27 municipalities holding non-partisan elections under Faulkner Act Council-Manager Plans A, B, C, and D and Mayor-Council Plans A and D (adopted prior to 1956) and Mayor-Council B and C Plans to eliminate run-off election requirements through initiative and referendum procedures. The option to eliminate the runoff elections is in keeping with the County and Municipal Government Study Commission recommendation.

> As originally introduced and as approved by the Senate County and Municipal Government Committee, the bill would have simply eliminated all Faulkner Act runoffs without giving the voters in the 27 municipalities the opportunity to decide the question.

> This committee endorses the making runoffs optional and has amended Assembly Bill No. 2 accordingly so as to conform with Senate Bill No. 738 (OCR) so that the two bills may be joined on the Assembly floor.

As finally enacted, the bill, among other things, amended section 17–11 of the Optional Municipal Charter Law (*N.J.S.A.* 40:69A–160) to read as follows:

> a. At the regular municipal election in any municipality which has adopted articles 3 through 6, inclusive, or 9 through 12, inclusive, of this act, the candidates receiving the greatest number of votes cast shall be elected to the respective offices.

> b. Notwithstanding the provisions of subdivision a. of the section, the charter of any municipality adopting, on or after the effective date of this amendatory act, articles 3 through 6, inclusive, or 9 through 12, inclusive, may provide that at the regular municipal election the candidates receiving the greatest number and a majority of votes cast shall be elected to the respective offices; provided, however, that if:

(1) Nine councilmen-at-large are to be elected and four or more candidates for said office receive a majority of the votes cast, the nine candidates receiving the greatest number of votes shall be elected; or

(2) Seven councilmen-at-large are to be elected and three or more candidates for said office receive a majority of the votes cast, the seven candidates receiving the greatest number of votes shall be elected; or

(3) Five councilmen-at-large are to be elected and two or more candidates for said office receive a majority of the votes cast, the five candidates receiving the greatest number of votes shall be elected; or

(4) Four councilmen-at-large are to be elected and two or more candidates for said office receive a majority of the votes cast, the four candidates receiving the greatest number of votes shall be elected; or

(5) Three councilmen-at-large are to be elected and one or more candidates for said office receive a majority of the votes cast, the three candidates receiving the greatest number of votes shall be elected; or

(6) Two councilmen-at-large are to be elected and one or more candidates for said office receive a majority of the votes cast, the two candidates receiving the greatest number of votes shall be elected.

As used in this subsection, the number constituting a majority of the votes cast shall be computed by dividing by two the number of voters who cast a vote for at least one candidate for councilman-at-large, and then adding one. Voting machines to be used in such election shall be equipped, as soon as practicable, with one or more counters so connected as to keep a tally of the number of voters who cast votes for one or more of the candidates for councilman-at-large. Until such time as suitable counters have been so provided, or whenever the tally of the number of voters cannot be determined for any reason, then the number constituting said majority of the votes cast shall be computed by adding all the votes cast for each candidate for said office, dividing that total by twice the number of councilmen-at-large to be elected and then adding one.

c. Any municipality which was governed by the provisions of this section prior to the effective date of this amendatory act shall be governed by the provisions of subsection b. of this section on and after the effective date of this amendatory act for so long as it continues to be governed by articles 3 through 6, inclusive, or 9 through 12, inclusive, except as provided in subsection d. of this section.

d. On and after the effective date of this amendatory act, any municipality in which run-off elections are held pursuant to the provisions of subsection b. or c. above may adopt by referendum the provisions of subsection a. above; and any municipality governed by articles 3 through 6, inclusive, or 9 through 12, inclusive, in which runoff elections are not held, may adopt by referendum the provisions of subsection b. above. In either case, the question of adoption may be initiated by the voters pursuant to, and subject to the pertinent provisions of, sections 17–35 through 17–47 (C. 40:69A–184 through 40:69A–196) of the act of which this act is amendatory; or the question of adoption may be submitted to the voters by ordinance adopted by the governing body, in which case the question and ordinance shall be subject to the pertinent provisions of sections

17–42 through 17–47 of the act of which this act is amendatory (C. 40:69A–191 through 40:69A–196), except that no petition of the voters shall be necessary in order to submit the question.

From our review of the record submitted on this appeal we are satisfied that since the charter of the township does not provide for runoff elections and since the township has not as yet, by referendum, adopted such provision, regular municipal elections in the Township of Cherry Hill are now governed by subsection (a) of § 17–11 of L.1950, c. 210 (N.J.S.A. 40:69A–160) as amended by L.1980, c. 75. We accordingly hold that at such regular municipal elections "the candidates receiving the greatest number of votes cast shall be elected to the respective offices." Runoff elections are not now required in the township.

The judgment under review is reversed and the matter is remanded to the Law Division for the entry of an appropriate judgment consistent herewith.